UNITED STATES DISTRICT COURT FOR THE
FOR THE EASTERN DISTRICT OF VIRGINIA
**Newport News Division**

**LOUIS MARTINEZ,**                                                             Civil Action No.:_____

       **Plaintiff**

v.

**CITY OF NEWPORT NEWS,**

       **Defendant.**

**COMPLAINT**

Louis Martinez, by and through the undersigned counsel brings this Complaint against The City of Newport News for discrimination-based on age and national origin, and in support thereof states as follows:

**PRELIMINARY STATEMENT**

1. The Plaintiff, Louis Martinez, brings this action against The City of Newport News (the "Defendant") for Plaintiff's wrongful termination from employment with the City of Newport News based in whole or in part, upon his Race/National Origin and Age in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, by the Civil Rights Restoration Act of 1991, 42 U.S.C. § 1981 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 12201 *et seq*.

2. Defendant hired Plaintiff in April of 2017 as Director of Waterworks. During his tenure as Director, Plaintiff received several letters of accomplishment from the City for his work performance and brought recognition to the City for his work. Despite Plaintiff's many achievements, Defendant subjected him to discrimination based on his

national origin, (Hispanic) and his age, (68). On January 31, 2020, after more than two years of service Defendants summarily fired Plaintiff and replaced him with a Caucasian employee who was significantly younger, had less seniority and less experience. Prior to termination, Plaintiff had no write-ups or disciplinary history. However, his intended replacement who also was Plaintiff's subordinate was a younger, white Caucasian male with performance, behavioral and disciplinary issues.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this is a civil action arising under the ADEA and pursuant to Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. §§ 2000e, *et seq.*; the Civil Rights Act of 1966, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. § 1981; and 42 U.S.C. § 1981a. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed, and protected by federal law. The Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202 regarding declaratory judgment.

4. Venue is proper in the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 139(b), where all Defendants regularly conduct business, where all the wrongful conduct occurred, and where Plaintiff was employed when all complained-of-acts herein occurred.

## ADMINISTRATIVE PREREQUISITES

5. On September 10, 2020, Plaintiff timely filed a charge of age discrimination and

national origin with the Equal Employment Opportunity Commission (EEOC). **(See Exhibit A)**

6. October 1, 2021, Plaintiff received a Notice of Right to Sue. **(See Exhibit B)** This Complaint has been filed within 90 days of receipt of that notice. As such, Plaintiff has complied with all administrative pre-requisites.

## PARTIES

7. Plaintiff, a 68-year-old Hispanic male, was a citizen of the Commonwealth of Virginia and a resident of Newport News, Virginia at all times relevant to this Complaint. Plaintiff now resides in Texas.

8. Plaintiff is an employee, as defined by the ADEA and pursuant to Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. §§ 2000e, *et seq.*

9. Defendant, City of Newport News, is an employer within the definitions of the ADEA and Title VII to the 1964 Civil Rights Act. It is also a political subdivision of the Commonwealth of Virginia, pursuant to Title 15.2 of the Virginia Code, and a "person" subject to suit within the meaning of 42 U.S.C. § 1983. The City employs more than 500 employees and has always done so pertinent to this action. It may be served by serving its City Attorney, Collins L. Owens Jr., 2400 Washington Avenue, 9th Floor, City Hall, Newport News, VA 23607.

## STATEMENT OF FACTS

10. Plaintiff a Hispanic, 67-year-old (now 68) began working for Defendant on April 1, 2017, as the Director of the Waterworks Department. At the time Defendant hired Plaintiff, he was approximately 64 years old.

11. During his tenure, Plaintiff oversaw the Waterworks Department serving over

410,000 people in 5 localities/jurisdictions, including the City of Hampton, York County, City of Poquoson, parts of James City County, and Newport News.

12. Plaintiff maintained the administration and management of the public water system, managed a $93 million departmental budget, maintained environmental regulatory drinking water and financial compliance, and led a workforce of 350 multi-discipline employees of Administrators, Engineers (civil, electrical, mechanical), Scientists (hydrologists, geologists, geographers (GIS specialists), foresters, biologists), IT Professionals, Accountants, Business/Land Property and Asset Managers/ Specialists, Journeyman and other Certified Craftsman, Clerks, Water Plant Operator

13. During his employment, Plaintiff excelled as Director. His exemplary performance record is unblemished- he earned annual raises for all periods of his review. Since his employment and under his direction, the Waterworks Department both publicly owned water treatment plants (POTW's) earned, the 2018 Excellence in Plant Operations- Silver Award from the Virginia Department of Health- Office of Drinking Water for the Newport News Harwood's Mill Water Treatment Plant, and received the 2018 Excellence in Plant Operations Bronze Award from the Virginia Department of Health- Office of Drinking Water for the Lee Hall Water Treatment Plant. Furthermore, under his leadership and management, his department was presented the Association of Metropolitan Water Agencies, whose membership represents over 150 million customers, the 2019 Sustainable Water Utility Management Award. This award is the highest recognition for management excellence of this professional organization and demonstrates a high level of commitment on excellence service delivery, infrastructure, reliability, regulatory compliance, safety, business strategy and operational efficiency as

also evidenced by Standard and Poor's and Moody's Aa1 excellent bond ratings.

14. In addition, under Plaintiff's direction, the Department of Waterworks facilities held the highest level attainable from the Virginia Department of Environmental Quality's - Environmental Excellence Program every year since 2017 through the time of Plaintiff's termination.

15. Defendant recognized Plaintiff's accomplishments by issuing him several letters of accomplishments/appreciations, awards, and merit raises. Despite these accomplishments, Plaintiff was terminated because he was not a "good fit." Prior to termination, Plaintiff had not been subject to any disciplinary actions. Nor had he received any poor evaluations. At the time of termination, Plaintiff was specifically told by the firing decision maker that "he was too old and too old school".

16. Despite his excellent work performance, Defendant marginalized Plaintiff while treating younger similarly situated employees more favorably. For example, defendant marginalized Plaintiff in job assignments, by stripping him of some of his job duties, isolating him from projects under his control, diminishing his authority by allowing subordinates to circumvent the chain of command.

17. On several occasions, Plaintiff was removed from meetings in which he was privy to attend to oversee projects in contrast, Plaintiff's replacement who was less experienced, was given authority to complete work not approved by his direct report.

18. When Plaintiff made complaints about the younger Caucasian male, the complaints were ignored. Defendant dismissed policy violations by the younger Caucasian male, including but not limited to scheduled private meetings during work hours- that should have required a vacation leave slip.

19. When the younger Caucasian male made complaints about the Plaintiff, the complaints were accepted as true, and action was taken against Plaintiff.

20. The younger, Caucasian male also had poor performance by not completing his workload in a timely manner, or by not properly prioritizing more complex work.

21. Despite such complaints, the individual was permitted to carry out lower prioritized work and unapproved appropriations.

22. The younger, Caucasian male was about 10 years younger than Plaintiff.

23. He was less experienced and had been reported to Human Resources and Plaintiff's senior administrator for insubordination, failure to complete assignments as directed, excessive tardiness and or absences, despite such, Plaintiff was informed by hiring officials that the individual was being selected to replace Plaintiff.

24. Plaintiff asserts that the termination was due to national origin/race and age. Plaintiff was constantly subjected to comments regarding Plaintiff's age such as "how old are you, since you've worked in government for a long time", "since your kids are grown, you must be close to retirement". These comments were made by hire-ups and co-workers. On one occasion, Plaintiff reported the younger Caucasian male for scheduling private meetings and attendance; the younger male and the senior administrator laughed at Plaintiff making reference to his age and memory stating that Plaintiff was paranoid and probably forgot.

25. Plaintiff was subject to comments about his race and national origin by the Assistant Director and Senior Administrator (i.e. asking other employees what where Plaintiff was from, what was his nationality and what was his race); making comments about Plaintiff's dark skin and brown eyes, in that Plaintiff's complexion and eye color

were in sharp contrast between his intended replacement who had deep blue eyes and fair skin".

26.     As a result, Plaintiff complained to Human Resources about his concerns regarding discrimination based on age and national origin. In fact, Plaintiff along with three other minority employees made similar complaints, but to no avail.

27.     Plaintiff also shared his concerns about discrimination to the City Manager; however, Plaintiff asserts that the issues were not addressed.

28.     In October of 2019, Plaintiff voiced numerous concerns about providing water to a surrounding county at a lower rate than others. Such provision was a violation of policy.

29.     Plaintiff refused to proceed with the violation and reported such. Shortly thereafter

Plaintiff began to experience increased levels of discrimination and was subjected to constant comments about his age and national origin. Jokes were made about how long he had been around, and derogatory comments were made about his skin, he was compared to Native Americans in a disparaging manner. (Plaintiff was not Native American).

30.     After making several complaints and receiving no action, Plaintiff reached out to the City Attorney and again to the City Manager to voice his concerns. Shortly thereafter, Plaintiff was asked to sign a separation and release agreement, which he refused to do so. Plaintiff was ultimately terminated.

31.     Prior to termination, Plaintiff was informed that he was being replaced by a Caucasian male, approximately 10 years younger than Plaintiff, who had less experience

7

than Plaintiff, and had been reported by Plaintiff for insubordination, failure to complete assignments as directed, excessive tardiness and/or absences.

## COUNT ONE
### DISCRIMINATORY TERMINATION BASED ON AGE IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### (29 U.S.C. §§ 12201 ET SEQ.)

32. Plaintiff repeats and realleges paragraphs 1 through 31 hereof, as if fully set forth herein.

33. The Age Discrimination in Employment Act (ADEA) prohibits employment discrimination against applicants and employees on the basis of age 29 U.S.C. §§ 621-634).

34. Plaintiff was 66 years old and qualified for his position when Defendant fired him.

35. Defendant regularly made discriminatory comments to Plaintiff and his co-workers regarding age and **national origin** as noted above.

36. In addition, Defendant marginalized Plaintiff while treating younger employees more favorably. Specifically, by stripping him of some of his job duties, isolating him from projects under his control, diminishing his authority by allowing subordinates to circumvent the chain of command, preventing him from participating in the hire process, and removing him from meetings in which he was privy to attend as the Director.

37. At the time of firing Plaintiff was informed that he was being replaced by a Caucasian male previously an Assistant Director, who was at least 10 years younger than Plaintiff, had less experience as a Director than Plaintiff.

38. Plaintiff suffered damages because of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

39. Defendant's willfully violated Plaintiff's rights under the ADEA and, as a result, is liable for liquidated damages.

## COUNT TWO
### Race/National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. §§ 2000e et al.)

40. Plaintiff repeats and realleges paragraphs 1 through 39 of the preceding paragraphs, as if fully set forth herein.

41. 42 U.S.C. § 2000e-2(a) provides it is an unlawful employment practice for an employer:

> (1) ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. Discrimination against men is just as unlawful under Title VII of the Civil Rights Act of 1964 as discrimination against women.

42. Plaintiff is a Hispanic male and was qualified for his position when Defendant fired him. At the time of termination, Plaintiff was performing his job satisfactorily as evidence by his many awards, evaluations, letters of appreciation, and merit raises

43. Defendant regularly made discriminatory comments to Plaintiff and his co-workers regarding his race and national origin. Specifically, derogatory comments were made about Plaintiff's dark skin and eye color in comparison to the white skin and blue eyes of his co-workers.

44. Derogatory remarks and jokes were made about whether Plaintiff was a Frenchman or a Native American. Plaintiff complained to Human Resources and the City Manager, but to no avail.

45. On a regular basis, Plaintiff was subjected to disparaging remarks about his race, national origin, and age.

46. In addition, Defendant marginalized Plaintiff while treating similarly situated employees more favorably. As previously stated, by stripping him of some of his job duties, isolating him from projects under his control, diminishing his authority by allowing subordinates to circumvent the chain of command, preventing him from participating in the hire process, and removing him from meetings in which he was privy to attend as the Director. Defendant minimized Plaintiff's authority when Plaintiff refused to allow a neighboring county to get water at a lower rate than other cities and counties, which was a direct violation of law and policy.

47. After refusing to do such, Plaintiff asserts that the level of discrimination heightened and despite complaining to hire-ups, individuals were permitted to treat him in a disparaging manner; subordinates were permitted and encouraged to circumvent

chains of command; Plaintiff was isolated form project duties, which were then given to the younger, Caucasian male, who was less qualified.

48. Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Award Plaintiff for his past and future loss of wages and benefits, plus interest;

B. Reinstate Plaintiff to a position comparable to his former position or, in lieu of reinstatement, award him front pay (including benefits);

C. Award to Plaintiff liquidated damages incurred in connection with this action;

D. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and

E. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Respectfully Submitted
Louis Martinez
_____/s/_____
Carteia V. Basnight, Esquire
Law Office of Carteia V. Basnight

Virginia Bar No. 79856
Counsel for Plaintiff
1919 Commerce Drive Suite 110
Hampton, Virginia 23666
(757) 838-0001 (tel.)
(757) 548-5871 (fax)


_____/s/_____